FILED

2006 Mar-09  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| IN RE DEPOSITION SUBPOENA SERVED UPON JAMES W. BALLARD (BALLARD vs. ILLINOIS CENTRAL RAILROAD), | ) ) ) ) ) ) | **Civil Action No.: 2:05-mc-1870-RDP** |
| IN RE DEPOSITION SUBPOENA SERVED UPON JAMES W. BALLARD (BALLARD vs. CERTAIN DEFENDANTS PENDING IN ASBESTOS MDL), | ) ) ) ) ) ) ) | **Civil Action No.: 2:05-mc-2491-RDP** |
| IN RE DEPOSITION SUBPOENA SERVED UPON JAMES W. BALLARD (BALLARD vs. USG CORPORATION), | ) ) ) ) ) ) | **Civil Action No.: 2:05-mc-2614-RDP** |
| IN RE DEPOSITION SUBPOENA SERVED UPON JAMES W. BALLARD (BALLARD vs. W.R. GRACE & CO.). | ) ) ) ) | **Civil Action No.: 2:05-mc-2615-RDP** |

## <u>MEMORANDUM OPINION</u>

The court has before it the following motions to quash filed by Movant James W. Ballard

("Ballard") in the above-referenced consolidated miscellaneous cases:

(1)    Motion to Quash (or Alternatively for a Protective Order Staying) the Subpoena Duces Tecum issued by this court to Ballard in the case of *In re USG Corporation, a Delaware Corporation, et al., Debtors*, Jointly Administered Case Nos. 01-2094 (JKF), 04-1559 (JFC) and 04-1560 (JFC), pending in the United States Bankruptcy Court, District of Delaware (Doc. #1,  2:05-mc-2614-RDP);

(2)    Motion to Quash (or Alternatively for a Protective Order Staying) the Subpoena Duces Tecum issued by this court to Ballard in the case of *In re Asbestos Products*

*Liability Litigation (No. VI)*, Case No. MDL 875, pending in the United States District Court for the Eastern District of Pennsylvania (Doc. #1, 2:05-mc-2491-RDP);

(3)     Motion to Quash (or Alternatively for a Protective Order Staying) the Deposition Subpoena Duces Tecum issued by this court to Ballard in the case of *William Bishop, et al. v. Illinois Central Railroad, et al.,* Case No. 2004-CV-406-DCB-JCS, pending in the United States District Court for the Southern District of Mississippi, (Doc. #1, 2:05-mc-1870-RDP); and

(4)     Motion to Quash (or Alternatively for a Protective Order Staying) the Deposition Subpoena Duces Tecum issued by this court to Ballard in the case of *In re W.R. Grace & Co., et al.,* Case No. 01-11139, pending in the United States Bankruptcy Court, District of Delaware (Doc. #1, 2:05-mc-2615-RDP).

The court held a hearing on these motions on February 28, 2006.   The court will address each motion in turn.

I.      **2:05-mc-2614-RDP *(Subpoena served by USG Corporation, a Delaware Corporation, et al.)***

In this case, Ballard's motion to quash, or in the alternative for a protective order, challenges the subpoena duces tecum issued by this court in the underlying bankruptcy proceeding pending in the District of Delaware. At oral argument, the parties indicated that a settlement has been reached in the bankruptcy court.  Accordingly, this court will, by separate order, dismiss this case without prejudice and await a stipulation of dismissal from the parties.

II.     **2:05-mc-2491-RDP (*Subpoena served by Asbestos Products Liability Litigation)***

In this case, Ballard's motion to quash, or in the alternative for a protective order, challenges the subpoena duces tecum issued by this court on behalf of the Defendants in *In re Asbestos Products Liability Litigation* pending before the Honorable James T. Giles in the United States District Court for the Eastern District of Pennsylvania Multi-District Litigation Court No. 875.  As a threshold matter, the Defendants in the underlying action submit that this court should abstain from

2

considering Ballard's motion and instead refer it to Judge Giles for his ruling on the merits. The court agrees and finds that the MDL is the proper forum for resolution of the issues presented by Ballard's motion.

Under 28 U.S.C. § 1407, which governs multi-district litigation, pretrial proceedings in cases in the MDL "shall be conducted by a judge or judges to whom such actions are assigned." *In re Subpoenas served on Wilmer, Cutler & Pickering & Goodwin Proctor LLP*, 225 F. Supp. 2d 1, 2 (D.D.C. 2003), *citing* 28 U.S.C. § 1407, *and* Fed. R. Civ. P. 45; *see also In re Subpoena Issued to Boies, Schiller & Flexner LLP*, 2003 WL 1831426 (S.D.N.Y.). This reasoning allows for "one judge to take control of complex proceedings, the better to avoid unnecessary duplication in discovery." *In re Subpoenas served on Wilmer*, 225 F. Supp. 2d 1, 2 (D.D.C. 2003). A referral to an MDL court "furthers the goal of judicial economy, one of the underlying purposes of § 1407," as the judge presiding over the MDL "is already familiar with this complex litigation, which has consolidated cases from districts throughout the country, including this one." *In re Subpoena Issued to Boies*, 2003 WL 1831426, at *1 (S.D.N.Y.). Other district courts have found that MDL courts have jurisdiction to rule on motions to quash and effectively operate as the court of the district in which the document production is to be made. *See, e.g., In re Subpoenas Served on Wilmer*, 255 F. Supp. 2d 1, 2-3.

It is well-settled that MDL 875 has the authority to handle all consolidated pre-trial proceedings for asbestos-related litigation pending in the federal court system and is thoroughly familiar with the issues raised by Ballard's motion. In fact, a March 1999 order issued in MDL 875 specifically authorizes discovery regarding litigation screenings. (Doc. #22, Ex. E, Order Authorizing Discovery Concerning Litigation Screenings (March 23, 1999)). Defendants in this case have filed

a Notice of Tag Along and requested that MDL 875 transfer Ballard's motion to that court. (Doc. #10).

For all of these reasons, this court concludes that this matter can and should be handled by the MDL 875, which has the jurisdiction and duty to manage all discovery matters in asbestos-related litigation, including the enforcement or quashing of a subpoena in that action issued from this court. The court abstains from ruling, and will, by separate order, instruct the Clerk of Court to administratively terminate the motion.

### III.   2:05-mc-1870-RDP *(Subpoena issued in William Bishop, et al. v. Illinois Central Railroad, et al.)*

In this case, Ballard's motion to quash, or in the alternative for a protective order, challenges the deposition subpoena duces tecum issued in *William Bishop, et al. v. Illinois Central Railroad, et al.* pending in the U.S. District Court for the Southern District of Mississippi. The subpoena was issued on behalf of Illinois Central Railroad Company ("ICRR"), one of the Defendants in the underlying action, and commands Ballard to appear for deposition and to produce a number of documents that fall into the 19 categories listed in "Exhibit A" to the subpoena. (Doc. #1).

Plaintiffs in the underlying *Bishop* case are all former employees of ICRR who allegedly have suffered injury as a result of workplace exposure to asbestos and who have brought a declaratory judgment action in Mississippi federal court to enforce a settlement reached in a Mississippi state court case they brought against ICRR under the Federal Employers Liability Act.  The settlement included several conditions precedent, including providing proof of a diagnosis of an asbestos-related or silica-related disease from a competent medical doctor. (Doc. #1, Ex. D). In response to the *Bishop* plaintiffs' complaint, ICRR has asserted, among other things, that no settlement exists

as to some of the plaintiffs who have failed to provide sufficient diagnostic proof from a competent medical doctor, which was required by the settlement procedure. (Doc. #1, Ex. E).  The subpoena issued on behalf of ICRR seeks discovery about whether Ballard conducted any examinations of plaintiffs, whether Ballard was involved in "screening" examinations of plaintiffs, the validity of the methodology used by Ballard in reviewing chest x-rays of plaintiffs, and whether any other diagnostic tests were performed on plaintiffs by Ballard.

It is well-settled under Federal Rule of Civil Procedure 45 that when a party objects to the enforcement of a subpoena, the burden is upon the party seeking the production to show good cause for the request. 4 Moore, Federal Practice, ¶ 34.08, at 2450 (2d ed. 1963).  Rule 45 (c)(1) states:  "A party or attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."  Fed. R. Civ. P. 45(c)(1).  Pursuant to Federal Rule of Civil Procedure  26(c), this court has the power to "make any order which justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery requests.  Fed. R. Civ. P. 26(c).

At oral argument on this motion, counsel for ICRR and counsel for Ballard agreed that most, if not all, of the documents sought by the subpoena are in the possession of the *Bishop* plaintiffs and can be obtained by ICRR through discovery in the underlying case.  Accordingly, because the materials sought by the subpoena are readily accessible to ICRR through means other than a non-party subpoena, the court finds that ICRR has not shown good cause why the subpoena should be enforced, nor has it taken "reasonable steps to avoid imposing undue burden or expense" to Ballard as required by Rule 45(c)(1).  Thus, the court finds that the motion to quash is due to be

granted, without prejudice to ICRR serving on Ballard a more limited subpoena at some future date if it finds that the information it seeks is not available through discovery in the underlying litigation.

IV.     **2:05-mc-2615-RDP (*Subpoena issued in In re W.R. Grace & Co., et al.*)**

In this case, Ballard seeks to quash the deposition subpoena duces tecum issued by this court on behalf of W.R. Grace & Co. ("Grace") in the bankruptcy matter of *In re W.R. Grace & Co., et al.*, pending in the District of Delaware.  In 2001, Grace and its affiliated companies filed for bankruptcy, and the proceedings in the Delaware court have been ongoing since that time.  (Doc. #1, at 2). Included in the bankruptcy estate are current and future asbestos personal injury claims, many of which are supported by, or based on, asbestos screenings/diagnoses performed by Dr. Ballard.  (Doc. #4, at 2-3). One of the core matters at issue in the bankruptcy is the "estimation" of Grace's liability for the personal injury claims, and Grace maintains that thousands of the claims are based upon underlying medical evidence that does not comply with applicable medical and scientific standards.[1] (Doc. #4, at 2-4).

Before serving the subpoena at issue in this case, Grace sought leave from the bankruptcy court to send an attorney questionnaire to the asbestos litigants' attorneys in order to glean information regarding diagnosis methods employed by the doctors involved in the asbestos claims and the relationships between the doctors, screening companies, and plaintiffs' counsel.  (Doc. #4, at 4).  At oral argument on Grace's discovery request, the Honorable Judith K. Fitzgerald, who is presiding over the bankruptcy proceedings, suggested that Grace should seek discovery of screening

---

[1]  In fact, Grace maintains that these diagnoses, which it asserts are medically suspect and potentially fraudulent, supported the filing of asbestos claims and that the assertion of those claims was one of the very reasons Grace was forced to file for bankruptcy.

and diagnostic practices from the doctors instead of the plaintiffs' attorneys. (Doc. #4, at 4-5, Ex. F).  Thereafter, Grace served on Ballard the subpoena issued by this court.

### A.  Scope of the Subpoena and Arguments in Support of Motion to Quash

In this case, Grace's subpoena seeks to take Ballard's deposition and to require production of a number of documents that fall into 23 categories outlined by the subpoena and related to Ballard's screenings/diagnoses. (Doc. #1).  By way of a chart submitted to the court at oral argument (hereinafter the "four-category chart"), Grace narrowed the scope of the documents it seeks to the following categories: (1) documents produced in response to the subpoena issued in *In re Plibrico*, 02-B-09952 (N.D. Ill. 2002); (2) completed ILO forms and diagnostic reports for asbestos claimants (citing *In re Silica Products Liability Litigation*, 398 F.Supp.2d 563 (S.D. Tex 2005); (3) a list of the names of individuals Ballard screened and diagnosed for litigation and communications from attorneys who requested that he review cases of individuals with suspected asbestos exposure (including x-rays) in *Rhines v. Smith*, Civ.-2002-191C; and (4) correspondence with attorneys and screening companies in *Adams v. A.W. Chesterton*, 2000-CV-32.

Ballard's arguments in support of his motion to quash are two-fold.  First, Ballard contends that his testimony and any responsive documents are unnecessary and irrelevant because Grace has no right to test the merits of individual claims at this stage in the bankruptcy proceedings given that the task of the bankruptcy court is to estimate the *aggregate* value of asbestos personal injury claims. (Doc. #2, at 10-11).  Second, Ballard argues that requiring him to sit for deposition or produce documents would infringe upon his Fifth Amendment privilege against self-incrimination given his

reasonable apprehension of criminal prosecution in the New York grand jury proceedings.[2] (Doc. #2, at 11-19). With respect to his deposition, Ballard urges application of the eight-part test articulated by the Alabama Supreme Court in *Ex Parte Ebbers*, 871 So.2d 776 (Ala. 2003), wherein the court considered a motion to stay civil proceedings pending resolution of parallel criminal charges and employed a balancing of interests test. That test weighs the movant's interest in postponing the civil action, including his inability to defend the civil action while asserting his Fifth Amendment privilege, against the prejudice that might result to the other party because of the delay. *Ebbers*, 871 So.2d at 785-89. With respect to the documents requested by the subpoena, Ballard argues that any required production would in effect constitute a "statement" in violation of his Fifth Amendment rights. *United States v. Hubbell*, 530 U.S. 27 (2000).

---

[2] In early 2005, the Honorable Janis Graham Jack, who is presiding over the silica multi-district litigation in the United States District Court for the Southern District of Texas, issued an unprecedented ruling that permitted the silica defendants to conduct discovery of consulting radiologists, including Ballard, who had provided readings for the plaintiffs' counsel on approximately 1,444 x-rays as to whether the films were consistent with silicosis disease. (*See* Order No. 29 from *In re Silica Products Liability Litigation*, in the United States District Court for the Southern District of Texas, Case No. 2:03-MD-1553, attached hereto as Exhibits B-1, B-2, B-3, B-4 and B-5). Judge Jack's opinion was highly critical of the silica plaintiffs' counsel, the screening companies that referred the clients to the plaintiffs' counsel, the doctors who rendered the diagnoses and the B-reader radiologists. (*Id.*). Apparently, Judge Jack's opinion motivated the United States Attorney's Office in the Southern District of New York to convene a grand jury to consider possible criminal charges arising out of civil litigation relating to silica and asbestos. The Wall Street Journal reports, "[A] grand jury in the Southern District of New York is looking into all this, sending subpoenas to doctors and screening companies that Judge Jack has cited for 'manufacturing' silica claims for money… Among them is a recent court filing, in which one doctor involved in the Jack opinion, James Ballard (responsible for at least 11,000 asbestos diagnoses), has admitted that he is a 'subject' of a 'criminal' grand jury proceeding." (Doc. #2, Ex. H, *"Screening for Corruption,"* The Wall Street Journal, December 2, 2005). Counsel for Dr. Ballard has met with the United States Attorney's Office for the Southern District of New York, and based upon that meeting, Ballard believes that he is a target of the grand jury investigation. (Doc. #2, at 7-8).

8

In addition to the arguments advanced by Ballard's motion to quash, the attorneys from the Environmental Litigation Group, P.C. ("ELG"), who represent approximately 8500 plaintiffs in asbestos cases pending in Alabama, Texas, and Georgia, assert a work product privilege as to many of the requested documents because they retained Ballard as a consulting expert to read chest x-rays on behalf of individuals exposed to asbestos. (Doc. #9).[3]

### B.    Analysis of Subpoena Deposition Request

For the reasons outlined below, the court is not persuaded by Ballard's arguments to quash Grace's deposition subpoena and therefore, the court finds that Ballard's motion is due to be denied as to that request.   First, the court finds that Ballard's undue burden/relevancy argument is off the mark.  Although Judge Fitzgerald has not yet ruled on how to estimate the value of the personal injury claims, her comments at oral argument suggest that she envisioned that Grace would seek the information requested from doctors like Ballard, not law firms. (Doc. #4, Ex. F, at 75-76). Given that Judge Fitzgerald has already indicated that she perceives discovery from diagnosing doctors to be appropriate (particularly in lieu of questionnaires being sent to lawyers), this court is not inclined to determine that it is not.

With respect to Ballard's Fifth Amendment argument, the court is likewise not persuaded by Ballard's suggestion that the court should apply the Alabama Supreme Court's *Ebbers* balancing of

---

[3] Although their motion was technically filed in all four consolidated cases, ELG clarified during the hearing that their joinder in the motion to quash relates only to three cases: (1) 2:05-mc-2614-RDP (Ballard subpoena issued in *In re USG Corporation, a Delaware Corporation, et al., Debtors*); (2) 2:05-mc-2491-RDP (Ballard subpoena issued in *In re Asbestos Products Liability Litigation (No. VI)*); and (3) 2:05-mc-2615-RDP (Ballard subpoena issued in *In re W.R. Grace & Co., et al.*).  Because the court did not rule substantively on either  2:05-mc-2614-RDP or 2:05-mc-2491-RDP, it need only consider ELG's assertion of the work product privilege in relation to this case.

interests test - and stay Ballard's deposition pending the outcome of the grand jury investigation - rather than the Eleventh Circuit standards articulated in cases such as *United States v. Argomaniz*, 925 F.2d 1349, 1356 (11th Cir. 1991) and *United States v. Lot 5, Fox Grove*, 23 F.3d 359, 364 (11th Cir. 1994). In *Argomaniz*, the Eleventh Circuit reiterated the rule that a deponent's intention to assert his Fifth Amendment privilege in response to questioning does not extinguish his obligation to appear for deposition; rather, the deponent must assert any privilege on a question-by-question basis. *Argomaniz*, 925 F.2d at1356; *see also Anglad v. Sprague*, 822 F.2d 1035, 1037 (11th Cir. 1987); *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1970). In *Lot 5, Fox Grove*, the court held that a stay of a civil proceeding pending the outcome of parallel criminal proceedings is neither constitutionally required nor justified by the intention of the deponent to make a blanket assertion of the Fifth Amendment privilege. *Lot 5, Fox Grove*, 23 F.3d at 364. In fact, courts in this Circuit have generally imposed a stay of a civil deposition in favor of parallel criminal proceedings only when the "invocation of the Fifth Amendment would have necessarily resulted in an adverse judgment," *Anglada v. Sprague*, 822 F.2d 1035, 1037 (11th Cir. 1987), or, as one bankruptcy court put it, result in a "*certain loss* of the civil proceeding on summary judgment if the civil proceeding were to continue." *In re Financial Federated Title & Trust, Inc.,* 252 B.R. 834, 837 (Bankr. S.D. Fla. 2000)(emphasis added).

Ballard argues that the "certain loss" test should not apply here because Ballard is not a party to the bankruptcy case and a deponent cannot face a certain loss in a case in which he is a non-party. According to Ballard's argument, this means a more lenient test (such as the one articulated by the Alabama Supreme Court in *Ebbers*) must apply in such a situation. But that is where the logic of Ballard's argument breaks down. The courts in this Circuit have said that a party may only avoid

a deposition if the invocation of a Fifth Amendment privilege would necessarily result in a certain loss of the case.  If that threat is not present, the party must attend the deposition and assert the privilege on a question-by-question basis.  When a non-party is subpoenaed for deposition, he suffers no threat of certain loss in that case.  Therefore, he is in the same position as a party whose invocation of the privilege in a deposition will not cost him the case.  That is, like the party-deponent who does not face a certain loss, a non-party is not at risk of losing the case in which he must testify and thus he, too, must attend the deposition and decide as to each question asked whether to assert the privilege.[4]  For these reasons, the court finds that Ballard's motion to quash the deposition aspect of Grace's subpoena is due to be denied.

### C.    Analysis of Subpoena Document Request

With respect to the document aspect of the subpoena, as modified by the four-category chart submitted by Grace at oral argument, the court finds that Ballard's motion to quash is due to be denied, in part, and granted, in part.  Once again, Ballard's undue burden/relevancy argument is without merit.  For the same reasons applicable to the deposition aspect of the subpoena, this court will not second-guess Judge Fitzgerald's indication that discovery from diagnosing doctors is calculated to lead to the discovery of admissible evidence related to the issues pending before the bankruptcy court.  Although Ballard may have raised some genuine concerns about the breadth of

---

[4] Moreover, this court is not convinced that the Eleventh Circuit would opt to apply the *Ebbers* test in this case in light of its clear pronouncement in *Lot 5, Fox Grove* that "a blanket assertion of the [Fifth Amendment] privilege is an *inadequate* basis for the issuance of a stay."  *Lot 5, Fox Grove,* 23 F.3d at 364.  Ballard has also questioned the wisdom of applying the "certain loss" test in this (and other) cases.  But given the court's determination that the Eleventh Circuit would apply that test here, the wisdom of doing so is an issue for the Eleventh Circuit - not this court - to decide. Moreover, Ballard's argument that his assertion of the privilege potentially could result in an adverse judgment or "certain loss" in future cases in which he is a party is nothing more than speculation and conjecture.

the subpoena at oral argument, those concerns have been alleviated by Grace's decision to narrow the subpoena scope to the items outlined in the four-category chart.

Thus, the court will focus on Ballard's fear that "the 'act of production' itself may implicitly communicate 'statements of fact'" in violation of his Fifth Amendment privilege against self-incrimination.  *United States v. Hubbell*, 530 U.S. 27, 37 (2000)(internal citations omitted).  In *Hubbell*, although the Supreme Court recognized that the act of producing documents can be testimonial, it made clear that the act of production privilege only applies when the production communicates "information about the existence, custody, and authenticity of the documents." *Hubbell*, 530 U.S. at 37.  In this case, prior to the pendency of the grand jury proceedings, Ballard produced documents  in the matter of *In re Plibrico*, 02-B-09952 (N.D. Ill. 2002) that are responsive to this subpoena, as outlined in category one of the four-category chart.[5]  Furthermore, in other proceedings, including the silica MDL proceeding in Texas, Ballard has further acknowledged the existence, custody, and authenticity of the documents sought by Grace's request (*see* Doc. #4, at 27-28), and this court cannot conclude that either the existence, custody, or authenticity of any of the requested documents is seriously in dispute.  Therefore, the court finds that the act of production privilege does not shield the production of documents to the modified subpoena in this case.

Nonetheless, the court is concerned about the work product privilege asserted by ELG. Ballard was retained by ELG as a Rule 26(b)(3) consulting expert only and not a "testifying expert" under Rule 26(b)(4); therefore, the materials he prepared and his communications with ELG may be protected by the work product privilege. *See, e.g., Shields v. Sturm, Ruger & Co.,* 864 F.2d 379,

---

[5] Grace has represented to the court that a protective order in the *Plibrico* matter prevents Grace from accessing those documents directly from the litigants in that case.

381-82 (5th Cir. 1989). As the court noted at oral argument, it suspects that some of the documents requested in both categories three (*i.e.*, a list of the names of individuals Ballard screened and diagnosed for litigation and communications from attorneys who requested that he review cases of individuals with suspected asbestos exposure (including x-rays) in *Rhines v. Smith*, Civ.-2002-191C) and four (correspondence with attorneys and screening companies in *Adams v. A.W. Chesterton*, 2000-CV-32) of Grace's four-category chart are privileged. Pursuant to Rule 26(b)(3), discovery of materials prepared by Ballard in anticipation for trial are discoverable only "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without due hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3).

Ballard admits that he has produced in prior litigation some of the documents requested by the subpoena. However, ELG - who holds the privilege - clarified at oral argument that it did not authorize that production, and therefore the court finds that no general waiver has occurred as a result of the prior production. On the other hand, ELG admits that it *has waived* its privilege with respect to any documents that ELG has provided to settling claimants or other persons outside the cloak of the privilege. However, the parties dispute the extent to which ELG's waiver applies. For example, although Grace and ELG do not dispute that the privilege has been waived with respect to any "positive" B-reads disclosed to settling claimants, Grace maintains that waiver extends to any communications by Ballard about those B-reads, including communications with ELG. Rather than conduct a document-by-document inquiry, the court believes that the parties may be able to work through some of these issues by agreement, facilitated by Grace first designating the claimants to which Grace believes a waiver has occurred.

13

Accordingly, the court will order Ballard to produce documents responsive to the four-category chart, but only subject to the work product privilege asserted by ELG. The court will order the parties to confer regarding the work product privilege and attempt to reach a resolution by agreement as to those documents which will be sheltered in accordance with the privilege.

**V.    Conclusion**

For the reasons outlined above, the court will moot the motion to quash pending in 2:05-mc-2614-RDP and await a stipulation of dismissal; abstain from ruling on the motion to quash pending in 2:05-mc-2491-RDP; grant the motion to quash pending in 2:05-mc-1870-RDP; and deny, in part, and grant, in part, the motion to quash pending in 2:05-mc-2615-RDP. A separate order will be entered.

**DONE** and **ORDERED** this _____9th_____ day of March, 2006.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

14